698 So.2d 22 (1997)
Helen KENDRICK, Plaintiff-Appellee,
v.
BILL LIBERTO ENTERPRISES, Defendant-Appellant.
No. 96-979.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1997.
*23 Knight Edward Doggett, Alexandria, for Helen Kendrick.
Jay P. Adams, Monroe, for Bill Liberto Enterprises.
Before YELVERTON, SAUNDERS, PETERS, AMY and GREMILLION, JJ.
SAUNDERS, Judge.
In this workers' compensation proceeding, the employer-appellant asks that we reverse its being found liable for penalties, attorney fees and travel expenses associated with plaintiff's need to obtain medical services.

FACTS
On March 7, 1995, claimant, Helen Kendrick, was injured when she slipped while working at the Dairy Queen in Ball, Louisiana. Ms. Kendrick was taken by the store manager to see Dr. William Brown at the Cabrini Center immediately after the accident. Dr. Brown initially diagnosed plaintiff with a low back strain and later referred Ms. Kendrick to Dr. Beurlot, a physiatrist in Alexandria, who, like himself, was chosen by the employer.[1] After examining Ms. Kendrick, Dr. Beurlot noted that he found no evidence of a bony or neurological injury and recommended that she return to her normal activities on April 4,1995.
On April 7, 1995, claimant was released to return to work by Dr. Brown, where she continued through April 13, 1995, when her continuing pain prompted Ms. Kendrick to see Dr. Baer Rambach, an orthopedic surgeon, in Shreveport. Correspondence dated April 19, 1995, indicated that Dr. Rambach diagnosed Ms. Kendrick with an injury to the cervical and lumbar spines and further indicated that Dr. Rambach concluded that claimant was temporarily totally disabled from gainful employment and would remain so until further notice.
On a second visit to Dr. Rambach on April 18, 1995, a physical examination and X-ray revealed that Ms. Kendrick suffered contusions and sprains to the cervical and lumbosacral regions of her spine as well as her right elbow and forearm. Dr. Rambach further recommended physical therapy rather than sophisticated testing, such as MRI's, a myelogram, or CAT scans, and suggested that claimant be referred to the Alexandria Physical Therapy Center. It is clear that on this second visit, Dr. Rambach was still of the opinion that Ms. Kendrick was unable to return to work.
This controversy arose when her employer, notwithstanding its receipt of Dr. Rambach's reports, concluded that Ms. Kendrick was able to return to the workplace and, on that basis, discontinued her compensation benefits.[2] The adjuster for the defendant, Karen *24 Junot, advised plaintiff's lawyer of her decision by letter dated May 11,1995.
Despite the fact that Ms. Junot was made aware of her misinformation, she did not reinstate the payment of benefits due, but instead arranged for a second opinion with Dr. Cline, an orthopedic surgeon in Monroe.[3] It was only after July 28, 1995, when Ms. Kendrick saw Dr. Cline, a physician for the employer, that Ms. Junot expressed a willingness on August 11,1995, to make claimant whole for the amounts due.
Additionally, the record reveals that Ms. Junot reimbursed Ms. Kendrick's expenses for her three Alexandria visits; however, she was not willing to pay for total mileage reimbursement for the visits to Dr. Rambach in Shreveport due to the belief that only reasonable mileage should be reimbursed. As a result, Ms. Junot reimbursed Ms. Kendrick for the distance she would have normally traveled if she had acquired a treating physician in the vicinity which equaled $16.80 to cover seventy miles of travel.
In her Form 1008 filed with the Office of Workers' Compensation on April 10, 1995, claimant sought temporary total disability benefits, medical expenses, mileage, penalties and attorney fees. Following defendant's answer, the matter was tried on February 22, 1996, after which the hearing officer rendered judgment as follows:
(1) Dr. Brown, Dr. Beurlot and Dr. Cline were employer's choices of physicians.
(2) Dr. Rambach was employee's choice of physician.
(3) Insurer and Employer failed to adequately investigate claimant's request for her choice of physician; claimant is awarded penalties of $250.00 and attorney's fees of $250.00.
(4) Employer failed to timely pay and/or reimburse claimant for the medical bill of Dr. Rambach. Employee is awarded penalties of $2,000.00 and attorney's fees of $2,210.00.
(5) Claimant is entitled to payment for her total mileage; employer did not have the authority to reduce payment for these expenses. Claimant is awarded penalties of $500.00 and attorney's fees of $500.00.
(6) Employer failed to pay indemnity benefits in a timely fashion; employee is awarded penalties of $1,100.00 and attorney's fees of $2,000.00.
(7) Employee is entitled to physical therapy.
(8) Employer is assessed with all costs of these proceedings.
From this judgment, defendant assigns the following errors on appeal:
(1) The hearing officer erred in awarding penalties and attorney fees, and in the alternative, defendant argues that the amount of attorney fees awarded by the hearing officer is excessive.
(2) The lower court erred in awarding penalties which exceeded the maximum amount allowable under La.R.S. 23:1201.

LAW
The obligations imposed upon an employer in dealing with its injured employees could not be more clear. A worker injured in the course and scope of his employment is entitled not only to wage replacement compensation in accordance with La.R.S. 23:1221, but also to vocational rehabilitation in accordance with La.R.S. 23:1226 and medical treatments and mileage reimbursement as required by La.R.S. 23:1203.
La.R.S. 23:1203 provides in pertinent part:
Duty to furnish medical expenses; prosthetic devices; other expenses
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized *25 by the laws of this state as legal....
....
C. In addition, the employer shall be liable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the employee....
Compensation benefits must be commenced in most cases on the fourteenth day after the employer has knowledge of its employee's injury, La.R.S. 23:1201(B) and (C), and failure to pay medical benefits timely also constitutes a basis for an award of penalties. Failure to timely pay "compensation or medical benefits" mandates assessment of a penalty in an amount equal to the greater of twelve percent of any unpaid "compensation or medical benefits" or fifty dollars per calendar day, whichever is greater when the employee's right to compensation or medical expenses has not been reasonably controverted. La.R.S. 23:1201(E). Attorney fees may be awarded in an appropriate case under La.R.S. 23:1201.2.
Having set forth the law, we now turn to that portion of defendant's first assigned error which initially complains that the hearing officer erred in assessing it with any sanctions.
After reviewing the evidence, we find merit in each of the four grounds upon which the hearing officer found fault in defendant's actions. Initially, we observe that defendant's refusal to pay Dr. Rambach's medical expenses and claimant's travel expenses related to Dr. Rambach's medical examinations sprung from its adjuster's misunderstanding of Dr. Beurlot's involvement. The adjuster erroneously believed that Dr. Beurlot was claimant's choice of orthopedic surgeon, when Dr. Beurlot in fact was the employer's choice of physiatrist, or pain doctor. Based upon this misunderstanding, the adjuster declined to fulfill its legal obligations.[4]
In light of the foregoing, we concur in the hearing officer's findings that defendant was delinquent in paying Dr. Rambach's medical and travel expenses from May 18, 1995, until August 11, 1995. The record clearly shows that Dr. Rambach's bill for treatment was received by defendant on May 18, 1995,[5] but that it was not paid until August 11, 1995, a period of time which is clearly unreasonable, and that during this same period defendant failed to pay mileage reimbursement to claimant. Moreover, it is unequivocally clear that even once Ms. Junot was inclined to pay any reimbursement, she was willing to reimburse only an amount equivalent to treatment from a physician in a seventy-mile range.
Next, we turn to the findings of the hearing officer that defendant failed to timely pay claimant's compensation benefits. In this case, the hearing officer, presented with the conflicting medical opinions of two non-treating physicians retained by defendant, a general practitioner and a physiatrist, and an orthopedic surgeon who was claimant's treating physician, found the latter more convincing. We discern no manifest error in her doing so. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990).
Moreover, like the hearing officer, we conclude that penalties and attorney fees were warranted for defendant's refusal to reinstate benefits, as this decision was grounded principally in defendant's refusal to provide claimant with the medical treatments so clearly required of it. An employer who fails to properly investigate its employee's medical status or who blindly relies upon an earlier medical report in the face of adverse medical information has only itself to blame for the consequences of its inaction. See generally, Nelson v. Roadway Exp., Inc., 588 So.2d 350 *26 (La.1991); Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976); Kelone v. Pinecrest State Sch., 626 So.2d 89 (La.App. 3 Cir.1993).

PENALTIES AND ATTORNEY FEES
Having determined that the hearing officer was not clearly wrong in assessing defendant with penalties and attorney fees, we next consider whether the hearing officer erred in meting them out piecemeal. Claimant was injured March 7, 1995; thus, the amount of penalties must be awarded in accordance with the statutory language then in place:
E. If, pursuant to this Chapter, any compensation or medical benefits payable without an order is not paid within the time period provided in Subsection B, C, or D of this Section, there shall be added to such unpaid compensation a penalty of an amount equal to twelve percent thereof or a total penalty of not more than fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such compensation, unless such nonpayment results from conditions over which the employer or insurer had no control.... The total fifty dollar per calendar day penalty provided for in this Subsection shall not exceed two thousand dollars in the aggregate.

La.R.S. 23:1201(E); Acts 1992, No. 1003, § 1, effective January 1, 1993.[6]
By virtue of the amendment cited above and effective in 1993, the legislature for the first time added the delinquent payment of medical benefits as an independent ground for imposing penalties. Before then, it was at least arguable that penalties could be assessed only for the failure to timely pay wage benefits. See, e.g., Broussard v. West-Cal Constr. Co., 96-18 (La.App. 3 Cir. 6/12/96); 676 So.2d 743.[7] Nonetheless, regardless of what was intended by the law in force before 1993, there can be no question of its intent since then: for claims arising from workplace accidents occurring since 1993, La.R.S. 23:1201 has unquestionably imposed on illicitly recalcitrant employers a monetary penalty of the greater of 12% of any unpaid compensation or unpaid medical benefits, or fifty dollars per calendar day for each day any compensation or medical benefits remain unpaid.
The more narrow question presented by this dispute, however, is whether penalties may be awarded for concurrent delinquencies in the payments of compensation and medical benefits. Ultimately, resolution of this question turns on the $2,000.00 "aggregate" cap contained in the then applicable version of La.R.S. 23:1201(E) set forth above: does the cap pertain to the total sum of all penalties owed, or to the total of each penalty assessment?
Consistent with our opinion in LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97); 699 So.2d 95, we conclude that, at least for claims to be determined by the laws in force effective January 1, 1993, different penalties are to be assessed for delinquent payments of compensation and medical benefits. Our reasoning is that because penalties under La.R.S. 23:1201 are disjunctively due for arrearages in "compensation or medical benefits," an award is for either type that is delinquent; thus, it follows that each penal claim arises separately.
Having stated as much, we hold that defendant is required to pay claimant separate penalties for each arrearages, for a total of $2,000.00 in penalties for its failure to timely *27 pay claimant's medical expenses and an additional $1,100.00 for its failure to timely pay compensation benefits which claimant has not appealed, plus legal interest thereupon from the date of judicial demand until paid.
Finally, claimant is entitled to an additional $2,000.00 in attorney fees for time spent defending this appeal, plus any fees the hearing officer might find reasonably earned on remand.

DECREE
The judgment of the hearing officer is amended to award $3,100.00 in penalties for defendant's failure to reimburse claimant for her medical expenses and travel expenses incurred on trips to Dr. Rambach's office and for failure to pay compensation benefits. All attorney fees awarded by the hearing officer are affirmed, and we additionally award $2,000.00 for claimant's attorney fees on appeal.
AFFIRMED AS AMENDED AND RENDERED.
AMY, J., dissents and assigns reasons.
AMY, Judge, dissenting.
I respectfully dissent. In my opinion, given the conflicting nature of the medical opinions available to the employer, penalties and attorney's fees were not warranted in this case.
Further, for the reasons assigned in my dissent in LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97); 699 So.2d 95, I do not conclude that La.R.S. 23:1201(E) allows for a $2,000.00 penalty for medical expenses and a separate $2,000.00 penalty for failure to pay compensation benefits. Rather, it is my opinion that the statute, which provides that penalties available under Subsection E "shall not exceed two thousand dollars in the aggregate," simply means that the total amount of penalties cannot exceed $2,000.00.
NOTES
[1] Both Dr. Brown and Dr. Beurlot were the physicians chosen by the employer.
[2] The record indicates that the adjuster, Karen Junot, was of the impression that Dr. Beurlot was an orthopedic surgeon. However, it is revealed by correspondence from plaintiff's attorney, dated May 15, 1995, that Dr. Beurlot was not an orthopedic surgeon, but rather was a physiatrist.
[3] Unfortunately, Dr. Cline's earliest available opening was not until July 6, 1995, and claimant was unable to attend this appointment due to heart problems that ultimately resulted in open heart surgery on July 10, 1995.
[4] Under La.R.S. 23:1121(B), the employee has the right to select one treating physician in any field or specialty, and after his initial choice, he must obtain prior consent from the employer or the insurer for a change of treating physician within the same field or specialty; however, the employee is not required to obtain approval for a change to a treating physician in another field or specialty.
[5] In correspondence dated May 15, 1995, attorney for claimant wrote to the adjuster, Karen Junot, demanding that the bill of Dr. Rambach be paid in full and that the medical travel expenses be paid.
[6] This version of La.R.S. 23:1201(E) was amended and redesignated as 23:1201(F), as per Acts 1995, No. 1137, § 1, effective June 29, 1995.

Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
(Emphasis ours).
[7] But see Daugherty v. Domino's Pizza, 95-1394 (La.5/21/96); 674 So.2d 947, and LaHaye v. Westmoreland Casualty Co., 509 So.2d 748 (La.App. 3 Cir.1987).