| SULLIVAN, Judge.
Wendy Lejeune appeals the denial of her claims against Integrated Health Services (IHS) for supplemental earnings benefits (SEB), penalties, and attorney fees. For the following reasons, we affirm the workers’ compensation judge’s denial of continuing weekly compensation benefits and SEB, and we reverse the workers’ compensation judge’s denial of penalties, attorney fees, and costs.
FACTS
On March 15, 1996, Wendy Lejeune was injured in the course and scope of her employment as a nurse’s aide with IHS. Ms. Lejeune was lifting a patient with the assistance of a co-worker when she felt pain in her neck, shoulder, and arm on her left |2side. After she reported the accident to IHS, IHS sent Ms. Lejeune to Dr. George Desormeaux for treatment. After a period of time, Dr. Desormeaux referred her to Dr. John Budden, an orthopedist, for continued treatment. On June 13, 1996, Dr. Budden instructed Ms. Lejeune to discontinue working. A report containing this restriction was sent to IHS on June 14, 1996. Ms. Lejeune continued treatment with Dr. Budden until May 1997, when he was of the opinion that she had reached maximum medical improvement and released her to return to work.
Ms. Lejeune requested treatment with a doctor of her choice, Dr. Michel Heard. Ms. Lejeune’s first visit with Dr. Heard was August 5, 1996. Dr. Heard treated Ms. Le-jeune’s injury conservatively. At the time of trial, he had released her to perform sedentary to light work, restricting her lifting to no more than twenty-five pounds.
During her treatment, several tests were performed to determine the source of Ms. Lejeune’s continuing problems. The tests included a myelogram, an MRI, a CT scan, a post-myelogram CT scan, a bone scan, and an EMG/NCS. The results of all the tests were essentially normal, except for a bulging disc at C5-6 with minimal underfilling of the nerve root sleeve at that same level.
Pursuant to an order of the workers’ compensation judge, Dr. Thomas Montgomery, an orthopedic surgeon, examined Ms. Le-jeune on October 16, 1997. In connection with his examination, Dr. Montgomery reviewed all of her medical records and test results. In his opinion, all of Ms. Lejeune’s test results were essentially normal. After his review of the records and his examination of Ms. Lejeune, Dr. Montgomery believed that Ms. Lejeune had reached maximum medical improvement. He did not find any objective evidence for ' her continued 13complaints and was of the opinion that she could return to work. He did not assign any restrictions to her activities and testified she would be limited only by her subjective complaints of pain.
At the trial, Ms. Lejeune was cross-examined on whether or not she could work. She testified that she could drive a car and that she could work as long as the lifting requirements of the job were less than those of her work at the nursing home.
Ms. Lejeune’s claim for benefits was being handled for IHS by a third-party administrator (TPA). The TPA adjuster responsible for the claim received a copy of Dr. Budden’s June 14, 1996 correspondence placing Ms. Lejeune on non-work status on June 17, 1996. Even so, her weekly benefits were not paid for the period June 13 through July 24 until July 24, 1996. This lump sum payment was made pursuant to an agreement between counsel for Ms. Lejeune and the adjuster *618 whereby a scheduled mediation would be continued if scheduled benefits were brought current. Weekly benefits for the period July 25 through September 4 were not paid until August 29, 1996, and weekly benefits for the period September 5 through October 3 were not paid until October 1, 1996. Thereafter, benefits were timely, except for one time when the benefits were paid two days late.
LAW
In her appeal, Ms. Lejeune assigns four errors on the part of the trial court, but argues only three in her brief. Accordingly, the assignment regarding continuing weekly benefits, which she does not address in her brief, is deemed abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4.

14Supplemental Earnings Benefits

In order to recover SEB, Ms. Le-jeune must prove by a preponderance of the evidence that she is unable to earn wages equal to 90% or more of the wages she earned before her accident. Her inability to earn such wages must be proven to be the result of her work injury with IHS. La.R.S. 23:1221(3)(a); Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989).
In determining that Ms. Lejeune had not met her burden of proof on this issue, the workers’ compensation judge first considered Ms. Lejeune’s testimony that she could perform jobs that did not require her to lift as much as her work with IHS required. The workers’ compensation judge then considered that Ms. Lejeune had been unsuccessful in obtaining other employment even though she had submitted applications with numerous businesses. The workers’ compensation judge found that Ms. Lejeune had not proven that her alleged disability had prevented her from acquiring other jobs, noting that a prior felony conviction for forgery may have been a factor in Ms. Lejeune’s inability to secure employment.
The workers’ compensation judge also thoroughly reviewed the medical evidence and the opinions of the physicians, all of whom agreed that Ms. Lejeune could perform some type of work. Further, the trial court took judicial notice of the fact that the federal minimum wage at the time of trial was $5.15 per hour. Ms. Lejeune’s wage at the time of her injury was $4.60 per hour. Therefore, Ms. Lejeune could earn more than 90% of her pre-injury wages, i.e., $4.14 per hour, at any minimum wage job.
An appellate court can only reverse the ruling of a workers’ compensation judge if there is no reasonable factual basis for the judge’s findings, and the findings | gare clearly wrong. Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449. The record of this matter substantiates the workers’ compensation judge’s determination that Ms. Lejeune failed to carry her burden of proof that she was entitled to SEB, and we find no error in the ruling.

Penalties and Attorney Fees

Ms. Lejeune next assigns as error the workers’ compensation judge’s failure to award penalties and attorney fees for late payment of her weekly compensation benefits. La.R.S. 23:1201 provides the manner in which compensation benefits are to be made to employees. An employee’s first installment of compensation is to be paid no later than fourteen days after the employer has notice of the injury. In this case, Ms. Le-jeune’s first compensation installment was due July 1, 1996, fourteen days after IHS received notice that Ms. Lejeune was placed on non-work status. It was not paid until July 24, 1996.
Becky Dozier, the TPA adjuster who handled Ms. Lejeune’s claim, admitted that Ms. Lejeune’s temporary total benefits were not initially paid timely. She explained that the claim was first coded for medical benefits only until June 17, 1996 when she received a copy of Dr. Budden’s report removing Ms. Lejeune from work status. She further explained that during the same time period a change to their computer system may have contributed to the problem. We find these explanations unsatisfactory.
Penalties and attorney fees are provided for in La.R.S. 23:1201 and La.R.S. 23:1201.2, which are penal in nature. These provisions were enacted to “deter employers and insur *619 ers from irresponsibly handling an employee’s workers’ | (¡compensation claim. The legislature provided for statutory penalties in instances when the employee’s right to benefits has not been reasonably controverted by the employer, and attorney’s fees where an insurer has acted arbitrarily, capriciously_” Jeansonne v. American Native Const., 97-1228, p. 13 (La.App. 3 Cir. 3/6/98); 710 So.2d 306, 313 (citations omitted). In LaHaye v. Westmoreland Casualty Co., 509 So.2d 748 (La.App. 3 Cir.1987), penalties and attorney fees for untimely payments of compensation benefits and medical benefits were addressed. We find the facts and reasoning therein analogous to this case. In LaHaye, the court observed:
It is uncontradicted that these payments were late. Unless defendants can show that the late payments resulted from conditions over which the employer or insurer had no control or that the employee’s right to such benefits had been reasonably controverted, LSA-R.S. 23:1201 mandates a 12% penalty payment.
[[Image here]]
[N]o satisfactory explanation was offered as to why these benefits were not timely paid. Rather, the errors seem to have been made by Westmoreland’s agents not diligently reviewing and adjusting plaintiffs claim. This laxity will not be tolerated as it constitutes arbitrary and capricious action under LSA-R.S. 23:1201.2.
Id. at 750 (citations omitted).
No weekly benefits were paid for six weeks from the time Ms. Lejeune was taken off duty by Dr. Budden; that was five and one-half weeks after Ms. Dozier admitted receiving notice of the change to non-work status. Thereafter, even though Ms. Dozier promised Ms. Lejeune’s counsel that she would bring the benefits current in exchange for cancellation of a mediation conference, which she did, she failed to see that Ms. Lejeune’s benefits continued to be paid on time thereafter. We find three 17lapses of no less than four weeks each to be inexcusable. Accordingly, we find Ms. Lejeune is entitled to penalties and attorney fees.
The failure to pay benefits results in the assessment of a penalty in the amount of 12% of the unpaid compensation or $50.00 per calendar day an installment is late, whichever is greater, not to exceed $2,000.00. La.R.S. 1201(F). The first installment due July 1 was twenty-four days late; the installment due July 25 was thirty-five days late; and the installment due September 5 was twenty-six days late. A penalty of $50.00 per day for the eighty-five days the installments were late equals $4,250.00. An employee is entitled to one maximum penalty of $2,000.00 for an employer’s or insurer’s failure to timely pay any and all compensation benefits. LeJeune v. Trend Services, Inc., 96-550 (La.App. 3 Cir. 6/4/97); 699 So.2d 95. Therefore, we award penalties in the amount of $2,000.00. We set attorney fees at $1,500.00.

Costs

Ms. Lejeune appeals the workers’ compensation judge’s refusal to award her costs herein. In light of our reversal of the workers’ compensation judge’s ruling on the issue of penalties and attorney fees, we find the costs should be borne equally by both parties.
DECREE
For the foregoing reasons, that portion of the judgment of the workers’ compensation judge denying Ms. Lejeune SEB is affirmed. That portion of the judgment of the workers’ compensation judge denying Ms. Lejeune penalties and attorney fees is reversed. Ms. Lejeune is awarded penalties in the amount of $2,000.00; attorney fees are set at $1,500.00. That portion of the judgment of the | «workers’ compensation judge denying Ms. Lejeune costs is reversed, and costs are assessed equally to the parties. The cost of this appeal is assessed to IHS.
AFFIRMED IN PART, REVERSED IN PART, and RENDERED.